**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DAVID BARBOZA,
*Plaintiff-Appellant*,

v.

CALIFORNIA ASSOCIATION OF
PROFESSIONAL FIREFIGHTERS, a
California corporation; CALIFORNIA
ASSOCIATION OF PROFESSIONAL
FIREFIGHTERS, LONG-TERM
DISABILITY PLAN; CALIFORNIA
ADMINISTRATION INSURANCE
SERVICES, INC., a California
corporation; KENNETH BLANTON;
DENNIS CAMPANALE; GENE
DANGEL; JAMES FLOYD; CHARLES
GLUCK; BRIAN PINOMAKI; WILLIAM
SOQUI, individually and as Plan
Directors,
*Defendants-Appellees*.

No. 11-15472

D.C. No.
2:08-cv-02569-
FCD-GGH

DAVID BARBOZA,
*Plaintiff-Appellant*,

v.

CALIFORNIA ASSOCIATION OF
PROFESSIONAL FIREFIGHTERS, a
California corporation; CALIFORNIA
ASSOCIATION OF PROFESSIONAL
FIREFIGHTERS, LONG-TERM
DISABILITY PLAN; CALIFORNIA
ADMINISTRATION INSURANCE
SERVICES, INC., a California
corporation; KENNETH BLANTON;
DENNIS CAMPANALE; GENE
DANGEL; JAMES FLOYD; CHARLES
GLUCK; BRIAN PINOMAKI; WILLIAM
SOQUI, individually and as Plan
Directors,
*Defendants-Appellees*.

No. 11-16024

D.C. No.
2:08-cv-02569-
FCD-GGH

DAVID BARBOZA,
                *Plaintiff-Appellee*,

                v.

CALIFORNIA ASSOCIATION OF
PROFESSIONAL FIREFIGHTERS, a
California corporation; CALIFORNIA
ASSOCIATION OF PROFESSIONAL
FIREFIGHTERS, LONG-TERM
DISABILITY PLAN; CALIFORNIA
ADMINISTRATION INSURANCE
SERVICES, INC., a California
corporation; KENNETH BLANTON;
DENNIS CAMPANALE; GENE
DANGEL; JAMES FLOYD; CHARLES
GLUCK; BRIAN PINOMAKI; WILLIAM
SOQUI, individually and as Plan
Directors,
                *Defendants-Appellants*.

No. 11-16081

D.C. No.
2:08-cv-02569-
FCD-GGH

DAVID BARBOZA,
*Plaintiff-Appellee*,

v.

CALIFORNIA ASSOCIATION OF
PROFESSIONAL FIREFIGHTERS, a
California corporation; CALIFORNIA
ASSOCIATION OF PROFESSIONAL
FIREFIGHTERS, LONG-TERM
DISABILITY PLAN; CALIFORNIA
ADMINISTRATION INSURANCE
SERVICES, INC., a California
corporation; KENNETH BLANTON;
DENNIS CAMPANALE; GENE
DANGEL; JAMES FLOYD; CHARLES
GLUCK; BRIAN PINOMAKI; WILLIAM
SOQUI, individually and as Plan
Directors,
*Defendants-Appellants*.

No. 11-16082

D.C. No.
2:08-cv-02569-
FCD-GGH

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
Frank C. Damrell, Jr., Senior District Judge, Presiding

Argued and Submitted
November 21, 2014—San Francisco, California

Filed April 7, 2015
Amended August 28, 2015

Before: John T. Noonan and Sandra S. Ikuta, Circuit Judges and William H. Albritton III,[*] Senior District Judge.

Order;
Opinion by Judge Ikuta

## SUMMARY[**]

### ERISA

The panel amended an opinion filed April 7, 2015, filed a superseding opinion, denied the parties' cross petitions for rehearing, and denied on behalf of the court the parties' cross petitions for rehearing en banc, in a case in which the panel affirmed in part and reversed in part the district court's judgment in an ERISA action alleging breach of fiduciary duties in the management and administration of an employee welfare benefit plan.

The panel affirmed the district court's summary judgment in favor of the defendants on a claim that they breached their duty to hold plan assets in trust. Applying the common law of trusts, the panel held that under 29 U.S.C. § 1103, a person (legal or natural) must hold legal title to the assets of an employee benefit plan with the intent to deal with these assets

---

[*] The Honorable William H. Albritton III, Senior District Judge for the U.S. District Court for the Middle District of Alabama, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

solely for the benefit of the members of that plan. Such a person is the "trustee," and the resulting relationship between the trustee and the participants in the plan with respect to a plan's assets is a "trust" for purposes of § 1103. The panel wrote that no specific terminology or label is required; as long as the trust or plan instrument names a person who will hold property in trust for another, § 1103(a) is satisfied. The panel concluded that the plan here complied with § 1103(a). Applying *Skidmore* rather than *Auer* deference, the panel rejected the Department of Labor's contention that the plan at issue does not meet the statutory requirements because the statute contemplates the "formal execution of a trust instrument." The panel wrote that the Department's attempt, in its amicus petition for rehearing, to clarify its interpretation of the statute and regulation likewise lacks persuasive power.

The panel reversed the district court's summary judgment in favor of the defendants on a claim that they breached their fiduciary duties by engaging in unlawful self-dealing. The panel held that the plan administrator's practice of paying its own fees and expenses from the plan's assets was a prohibited transaction and therefore a breach of fiduciary duty.

Reversing the district court's partial summary judgment in favor of the plaintiff, the panel held that the defendants did not breach their fiduciary duties by failing to distribute a summary annual report because the plan met the definition of a "totally unfunded welfare plan."

**COUNSEL**

Geoffrey V. White (argued), Law Office of Geoffrey V. White, San Francisco, California, for Plaintiff-Appellant/ Cross-Appellee.

Brendan J. Begley (argued) and Louis A. Gonzalez, Jr., Weintraub Tobin Chediak Coleman Grodin, Sacramento, California, for Defendants-Appellees/Cross-Appellants.

Marcia E. Bove (argued), Senior Trial Attorney; M. Patricia Smith, Solicitor of Labor; Timothy D. Hauser, Associate Solicitor, Plan Benefits Security Division; Elizabeth Hopkins, Counsel for Appellate and Special Litigation; and Alex Felstiner, Attorney, United States Department of Labor, Office of the Solicitor, Washington, D.C., for Amicus Curiae Thomas Perez, Secretary of Labor.

---

**ORDER**

The opinion filed April 7, 2015, and appearing at 782 F.3d 1072, is hereby amended. The superseding amended opinion will be filed concurrently with this order.

With these amendments, the panel has unanimously voted to deny the parties' cross petitions for rehearing, each filed May 12, 2015. Judge Ikuta has voted to deny the parties' cross petitions for rehearing en banc, each filed May 12, 2015, and Judge Noonan and Judge Albritton have so recommended. The petitions for rehearing en banc were circulated to the judges of the court, and no judge requested a vote for en banc consideration.

The petitions for rehearing and the petitions for rehearing en banc are **DENIED**.  No further petitions for rehearing or rehearing en banc will be entertained.

**OPINION**

IKUTA, Circuit Judge:

This appeal requires us to interpret three different provisions of the Employee Retirement Income Security Act of 1974 (ERISA): (1) the requirement in 29 U.S.C. § 1103(a) that "all assets of an employee benefit plan shall be held in trust by one or more trustees," sometimes called the "hold in trust" requirement; (2) the prohibition against fiduciary self-dealing under 29 U.S.C. § 1106; and (3) the "summary annual report" requirement under 29 C.F.R. § 2520.104b-10(a).[1]

I

This case arises out of a disability benefits dispute between David Barboza, a retired firefighter for the City of Tracy, California, and the California Association of Professional Firefighters (CAPF), the manager of an employee welfare benefit plan.  Barboza initially filed an action against CAPF and other co-defendants in March 2008, alleging that CAPF had withheld certain long-term disability

---

[1] We address the parties' additional claims on appeal and cross appeal in an unpublished memorandum disposition filed concurrently with this opinion.  *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 600 F. App'x 509 (9th Cir. 2015).

benefits to which Barboza was entitled.**²**  While that related action was ongoing, Barboza initiated a second lawsuit (the action on appeal here) in October 2008 against CAPF, California Administration Insurance Services, Inc. (CAISI), and individual members of the board of directors for both CAPF and CAISI (collectively, the defendants).  This time, Barboza alleged that the defendants had breached their fiduciary duties under ERISA in a number of different ways. Barboza and the defendants filed cross motions for summary judgment.  The district court's order on these cross motions is now before us on appeal.

A

An explanation of CAPF, CAISI, and the underlying employee welfare benefits plan is necessary to understand Barboza's ERISA claims.

According to its corporate bylaws, CAPF is a non-profit mutual benefit corporation.  It was incorporated at the behest of "[v]arious unions and other profit and non-profit mutual benefit associations" for the purpose of providing long-term disability benefits to participating employee members (and their beneficiaries) from the various fire departments around California.    CAPF  accomplishes  this  goal  through  its

---

**²** The district court dismissed Barboza's related action for failure to exhaust available administrative remedies under the Plan. We reversed in a published decision and remanded for further proceedings. *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073 (9th Cir. 2011).  On remand, the district court granted in part and denied in part each party's motion for summary judgment. On appeal for a second time, we affirmed in part and reversed in part the district court's order and again remanded the case to the district court for further proceedings. *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 594 F. App'x 903 (9th Cir. 2014).

management of a long-term disability plan ("Plan"), established by a document entitled the CAPF Long Term Disability Plan (the "Plan Instrument").

The parties do not dispute that the Plan is an employee welfare benefit plan governed by ERISA, *see* 29 U.S.C. § 1002(1)(A), which receives its funding exclusively from Plan participants and pays all benefits solely from Plan assets. Under the terms of the Plan Instrument, all funds, property, and additional assets held by the Plan are maintained exclusively in the name of CAPF for the benefit of the participants. CAPF manages the assets of the Plan through its board of directors, and supervises the payment of benefits to Plan members made pursuant to the terms of the Plan Instrument. The Plan Instrument provides that the Plan will be administered on a day-to-day basis by "a qualified California-licensed third party administrator" pursuant to an administrative services agreement that is consistent with the terms of the Plan Instrument and is approved by CAPF's board of directors. Pursuant to this provision, the Plan employs the California Administration Insurance Services, Inc. (CAISI) to act as the Plan's administrator under CAPF's supervision.

The Plan functions as follows. First, each participant makes a monthly contribution to the Plan in an amount established by the board of directors of CAPF. These contributions are deposited into a Wells Fargo Bank checking account, for which officers of CAISI are the signatories. When a Plan participant suffers total disability from an injury, sickness, or pregnancy, the participant submits evidence of this disability to CAISI, which then determines whether the participant is eligible to receive benefits under the criteria provided by the Plan Instrument. If the participant

is eligible, CAISI issues a check drawn on the Wells Fargo account for the appropriate amount.

In addition to paying benefits to eligible participants, CAISI also pays Plan expenses from the Wells Fargo account, including its own administrative service fees.  CAISI gives CAPF quarterly financial statements itemizing the Plan's fees and expenses.

B

Barboza alleges that the defendants violated ERISA through numerous breaches of their fiduciary duties in their management and administration of the Plan.  The district court granted the defendants' summary judgment motion on Barboza's claims that the defendants breached their fiduciary duties by failing to hold Plan assets in trust, and by allowing CAISI to pay its own fees from the Wells Fargo account.  The district court granted Barboza's summary judgment motion on his claim that defendants breached their fiduciary duty by failing to distribute a summary annual report to Plan participants.  The parties subsequently brought this appeal and corresponding cross appeal.

II

We have jurisdiction under 28 U.S.C. § 1291.  We review a district court's decision on cross motions for summary judgment de novo.  *See Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 970 (9th Cir. 2011).  We must determine, taking the evidence in the light most favorable to the nonmoving party, whether there are any genuine disputes of material fact and whether the moving party is entitled to

judgment as a matter of law.  *See Olsen v. Idaho State Bd. of Med.*, 363 F.3d 916, 922 (9th Cir. 2004).

A

We first consider Barboza's claim that the defendants violated ERISA's hold-in-trust requirement.  ERISA requires that, subject to exceptions not relevant here, "all assets of an employee benefit plan shall be held in trust by one or more trustees."  29 U.S.C. § 1103(a).  "Such trustee or trustees shall be either named in the trust instrument or in the plan instrument . . . or appointed by a person who is a named fiduciary."  *Id.*  The trustee or trustees "shall have exclusive authority and discretion to manage and control the assets of the plan."  *Id.*  The applicable regulations echo the statute, stating that with an exception not applicable here, "all assets of an employee benefit plan shall be held in trust by one or more trustees pursuant to a written trust instrument."  29 C.F.R. § 2550.403a-1(a).  Neither ERISA nor the regulations define the terms "trust," "trustee," or "trust instrument."

In the absence of any statutory or regulatory definition of these terms, we apply the "familiar maxim that a statutory term is generally presumed to have its common-law meaning."  *E.g.*, *Evans v. United States*, 504 U.S. 255, 259 (1992) (internal quotation marks omitted).  This maxim has particular force in the ERISA context, because the Supreme Court has held that "Congress invoked the common law of trusts to define the general scope" of fiduciary duties when it drafted the statute.  *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985)).  Our analysis therefore "both starts and ends" with the ordinary meaning of the terms "trust" and "trustee," as provided by the

common law of trusts.  *See United States v. Lazarenko*, 564 F.3d 1026, 1039 (9th Cir. 2009).

The common law of trusts has its roots in medieval England and the ancestor of the trust, the land conveyance device termed the "use."  *See* Amy Hess, George G. Bogert & George T. Bogert, *The Law of Trusts & Trustees* § 2 (3d ed. 2007) (hereinafter Hess et al., *Trusts & Trustees*).  The use was first employed to give gifts of property to religious friars whose vows prohibited them from owning property themselves, but by the beginning of the fifteenth century, it was the leading means of land conveyance.  *Id.*; *see also* William M. McGovern, Sheldon F. Kurtz & David M. English, *Wills, Trusts & Estates* 370 (4th ed. 2010) (hereinafter McGovern et al., *Wills, Trusts & Estates*).  In its simplest form, the use was a legal relationship by which one party, called the "feoffee to uses," agreed to accept and hold legal title to property on behalf and for the use of the beneficiary party, called the "cestui que use."  *See* Hess et al., *Trusts & Trustees* § 2; McGovern et. al, *Wills, Trusts & Estates* at 370.  Although King Henry VIII attempted to abolish this practice through the passage of the Statute of Uses in 1535, the statute left unaffected a number of uses, including a use by which the feoffee to uses (the modern day "trustee") took on active administrative duties when it agreed to hold the property on behalf of the cestui que use (the modern day "beneficiary").  Hess et al., *Trusts & Trustees* § 4, 5.  The uses that survived the Statute of Uses became known as "trusts" and were legally enforceable in courts of equity in England and, later, in the United States.  *Id.* § 5; *see also Davis v. United States*, 495 U.S. 472, 481 (1990) (holding that the statutory phrase "for the use of" "suggested a trust relationship" because "[f]rom the dawn of English

common law through the present, the word 'use' has been employed to refer to various forms of trust arrangements").

As this legal relationship became more pervasive in both England and its American colonies (and later the United States) in the eighteenth and nineteenth centuries, legal scholars sought to identify its main components. After surveying various definitions of the term "trust" between 1734 and 1897, one scholar concluded that a trust was "an obligation imposed either expressly or by implication of law whereby the obligor is bound to deal with property over which he has control for the benefit of certain persons of whom he may himself be one, and any one of whom may enforce the obligation." Walter G. Hart, *What Is a Trust?*, 15 L.Q. Rev. 294, 301 (1899). A later scholar observed that the law of trusts appeared "to have two aspects, the creation of personal relations, and the creation of rights in rem." Pierre Lepaulle, *Civil Law Substitutes for Trusts*, 36 Yale L.J. 1126, 1126 (1927). Thus, at common law, the term "trust" referred to a legal relationship by which one party, the "trustee," agreed to hold and administer property (the trust "res") for the benefit of another.

Consistent with this traditional common law doctrine, both scholars and courts define the terms "trust" and "trustee" as legal relationships.[3] *E.g.*, Austin Wakeman Scott, William

---

[3] Courts and treatises differentiate between the trust as a legal relationship, as it existed at common law, and "the use of the trust as a substitute for incorporation, as in the case of the so-called business trust or Massachusetts trust." *Scott & Ascher on Trusts* § 2.1.2. While the latter device is sometimes referred to as a "trust," it is not a common law trust relationship. Rather, a business or "'Massachusetts Trust' is a form of business organization" similar to a corporation. *Hecht v. Malley*, 265 U.S. 144, 146 (1924); *see also Northstar Fin. Advisors Inc. v. Schwab*

Franklin Fratcher & Mark L. Ascher, *Scott & Ascher on Trusts* § 2.1.4 (5th ed. 2006) (hereinafter *Scott & Ascher on Trusts*) ("We have said that a trust is a *relationship* with certain characteristics."); *Id.* § 2.2.2 ("A trust is a relationship with respect to property held by a trustee."). For example, the Restatement (Third) of Trusts defines the term "trust" as "a fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee." Restatement (Third) of Trusts § 2 (2003). Under the Restatement's definition, "[t]he term 'trust' also includes public funds and public and private pension-fund arrangements in trust form." *Id.* § 2 cmt. a. The Restatement defines "trustee" as simply the person, including a corporation or unincorporated association, "who holds property in trust." *Id.* § 3(3); *see also id* § 3(3) cmt. e. It is not necessary to use specific words to create a trust. George T. Bogert, *Trusts* § 11 (6th ed. 1987). Rather, "[i]f the words used convey the intent to establish a trust, they will have that effect." *Id.*; *see also United States v. Mitchell*, 463 U.S. 206, 225 (1983) (holding in a different context that a trust relationship arises where "[a]ll of the necessary elements of

---

*Invs.*, 779 F.3d 1036, 1040 (9th Cir. 2015) (distinguishing "a Massachusetts trust from the ordinary or private trust"). As such, a business trust is generally governed by rules applicable to that form of business organization. *See Restatement (Third) of Trusts* § 1 cmt.b (2003) (excluding "[t]he law relating to the use of trusts as devices for conducting business and investment activities" from its scope because such devices are business arrangements "best dealt with in connection with business associations" and more "properly governed by laws applicable to investment companies and to the issuance and sale of securities" rather than the common law of trusts).

a common-law trust are present: a trustee (the United States), a beneficiary (the Indian allottees), and a trust corpus (Indian timber, lands, and funds)" notwithstanding the fact that "nothing is said expressly in the authorizing or underlying statute (or other fundamental document) about a trust fund, or a trust or fiduciary connection" (quoting *Navajo Tribe of Indians v. United States*, 224 Ct.Cl. 171, 183, 624 F.2d 981, 987 (1980))).

Applying the common law definitions to ERISA's requirement that "all assets of an employee benefit plan shall be held in trust by one or more trustees," 29 U.S.C. § 1103(a), a person (legal or natural) must hold legal title to the assets of an employee benefit plan with the intent to deal with these assets solely for the benefit of the members of that plan. Such a person is the "trustee," and the resulting relationship between the trustee and the participants in the plan with respect to a plan's assets is a "trust" for purposes of § 1103(a). Finally, while these trustees must be identified in either "the trust instrument or in the plan instrument . . . or appointed by a person who is a named fiduciary," *id.*, no specific terminology or labels are required. Bogert, *Trusts* § 11. As long as the trust or plan instrument names a person who will hold property in trust for another, § 1103(a) is satisfied.

Accordingly, we conclude that the Plan complies with § 1103(a). The Plan Instrument requires CAPF to hold legal title to "all property, monies and contract rights" as well as all of the funds maintained in connection with the Plan. CAPF holds these assets for the Plan on behalf of the participants, and is therefore the named trustee. Restatement (Third) of Trusts § 3(3). The Plan Instrument thus establishes a fiduciary relationship between CAPF, as the trustee, and the

participants, as beneficiaries, with respect to the property contributed to the Plan (the trust res); this constitutes a trust according to its common law definition.  Because the Plan Instrument here is a written instrument that establishes a trust relationship and names CAPF as the trustee, it is a written trust instrument for purposes of § 1103(a) and 29 C.F.R. § 2550.403a-1(a).  *Cf. Mitchell*, 463 U.S. at 225; George T. Bogert, *Trusts* § 1 (6th ed. 1987).

In arguing against this conclusion, the Department of Labor contends that the Plan at issue here does not meet the statutory requirements in § 1103(a) because "[t]he statute clearly contemplates the formal execution of a trust instrument and the appointment of trustees, as the Secretary's regulations [at 29 C.F.R. § 2550.403a-1] reflect."  The Department's brief does not further explain its interpretation of what § 1103(a) requires or what it means by the "formal execution of a trust instrument."

Although we are doubtful that the single sentence quoted above qualifies as an interpretation of either § 1103(a) or 29 C.F.R. § 2550.403a-1, we will give the Department the benefit of the doubt and review its argument pursuant to our framework for examining agency interpretations of statutes and regulations.  In general, "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–43 (1984).  If "the statute is silent or ambiguous" as to the precise question at issue, *Gonzales v. Dep't of Homeland Sec.*, 508 F.3d 1227, 1235 (9th Cir. 2007) (internal quotation marks omitted), we next consider the agency's "regulations, which are entitled to deference if they resolve the ambiguity

in a reasonable manner." *Coeur Alaska, Inc. v. SE Alaska Conservation Council*, 557 U.S. 261, 277–78 (2009). But if these "regulations, too, are ambiguous . . . we next turn to the agencies' subsequent interpretation of those regulations." *Id.* at 278.

If the agency's interpretation of its regulations resolves the ambiguity of the regulations in a manner that is not "plainly erroneous or inconsistent with the regulation," we will ordinarily defer to it even when the agency's "interpretation comes to us in the form of a legal brief." *Auer v. Robbins*, 519 U.S. 452, 461–62 (1997) (internal quotation marks omitted). *Auer* deference is not warranted, however, if "the underlying regulation does little more than restate the terms of the statute itself." *Gonzales v. Oregon*, 546 U.S. 243, 257 (2006). When an agency promulgates a regulation that merely paraphrases the statute, we treat the agency's interpretation of the "parroting regulation" as an interpretation of the statute itself, which is entitled to deference "only to the extent it is persuasive." *Id.* at 257, 268–69 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Nor do we accord *Auer* deference to an interpretation that "would seriously undermine the principle that agencies should provide regulated parties fair warning of the conduct [a regulation] prohibits or requires." *Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2167 (2012) (internal quotation marks omitted). Where an agency announces its interpretation for the first time in an enforcement proceeding, and has not previously taken any action to enforce that interpretation, "the potential for unfair surprise is acute." *Id.* at 2167–68. Accordingly, under such circumstances, the agency's interpretation is entitled only to the "measure of deference proportional to the thoroughness evident in its consideration, the validity of its reasoning, its

consistency with earlier and later pronouncements, and all those factors which give it power to persuade." *Id.* at 2168–69 (quoting *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) (quoting *Skidmore*, 323 U.S. at 140)).

Applying this framework to the Department's amicus brief, and assuming for the sake of argument that 29 U.S.C. § 1103 and 29 C.F.R. § 2550.403a-1 are "silent or ambiguous" as to the "precise question" at issue here, we do not defer to the Department's interpretation in this case. First, *Auer* deference is not warranted here because the Department's regulation "does little more than restate the terms of the statute itself." *Gonzales*, 546 U.S. at 257. *Compare* 29 U.S.C. § 1103(a), *with* 29 C.F.R. § 2550.403a-1(a), (c).  Indeed, the only difference between the statute and the regulation is that the regulation adds the phrase "pursuant to a written trust instrument" to its hold in trust requirement. 29 C.F.R. § 2550.403a-1(a).  Both the regulation and the statute, however, require that the trustees of the Plan "shall be either named in the trust instrument or in the plan instrument." *Compare* 29 U.S.C. § 1103(a), *with* 29 C.F.R. § 2550.403a-1(c).  As a result, "the near equivalence of the statute and regulation belies the Government's argument for *Auer* deference." *Gonzales*, 546 U.S. at 257.  Therefore, we defer to any interpretation by the Department only to the extent it has the "power to persuade." *Skidmore*, 323 U.S. at 140.

Applying *Skidmore* deference, the Department's minimal interpretation of its regulation—which is little more than the assertion that the Plan does not meet statutory and regulatory requirements, as interpreted by the Department—lacks any persuasive power.  The Department's statement that "[t]he statute clearly contemplates the formal execution of a trust

instrument and the appointment of trustees, as the Secretary's regulations reflect," does not provide clear guidance, or make plain how the Plan fell short of this requirement. *See, e.g.*, Bogert, *Trusts* § 1 ("The trust instrument is the document by which property interests are vested in the trustee and beneficiary and the rights and duties of the parties (called the trust terms) are set forth."). Nor does the Department contend that it has taken enforcement actions against those deemed to have violated its interpretation of § 1103(a) or that its view is consistent "with earlier and later pronouncements," which might clarify its interpretation and "give it power to persuade." *See Mead*, 533 U.S. at 228 (quoting *Skidmore*, 323 U.S. at 140). Because we owe no deference to the Department's nominal interpretation, we reject its argument that the Plan falls short of this interpretation in some undefined way.

After this appeal was decided, the Department attempted to clarify its interpretation of the statute and regulation. In an amicus petition for rehearing, the Department argued that § 1103 required "that the written document establishing the trust must clearly label the trustees, beneficiaries, and trust res, and thus in express and unambiguous terms establish the intent to have a named or appointed trustee who formally accepts such appointment and exclusively hold all plan assets in trust for the beneficial interest of the plan participants and beneficiaries." But contrary to this labeling requirement, the Department also stated in the same sentence of this petition that it does not "take the position that the trust necessarily must be established by using defined terms or any particular word formulation." As a result of this internal inconsistency, we are left to guess what specific words or procedures are required in order to ensure compliance with the statute as interpreted by the Department.

Even assuming that an agency's interpretation first raised in a petition for rehearing could be entitled to deference under some circumstances, deference is not appropriate here. As explained above, *Auer* deference is not warranted because the Department's regulation, 29 C.F.R. § 2550.403a-1(a), (c), does little more than parrot 29 U.S.C. § 1103(a). *Gonzales*, 546 U.S. at 257. Moreover, because the Department's inconsistent views about labels and "particular word formulation" do not inform regulated entities what words or procedures are needed to meet the Department's requirements, affording *Auer* deference in these circumstances "would seriously undermine the principle that agencies should provide regulated parties fair warning of the conduct [a regulation] prohibits or requires." *Christopher*, 132 S. Ct. at 2167 (internal quotation marks omitted). Applying *Skidmore*, we conclude that the Department's interpretation of § 1103(a) lacks persuasive power. As noted above, the Department's statements are internally inconsistent, fail to provide clear direction to regulated parties, and otherwise lack the "hallmarks of thorough consideration." *Id.* at 2169. Accordingly, we do not defer to the Department's belated interpretation in its petition for rehearing.

We likewise reject Barboza's remaining arguments on this issue. Although Barboza argues that "a corporation like CAPF is not a trust," CAPF itself does not purport to be a trust; rather, it serves as the trustee in the trust relationship established by the written Plan Instrument.[4]    *See, e.g.*,

---

[4] In the week before oral argument, the defendants filed a motion requesting that we take judicial notice of IRS paperwork filed by CAPF demonstrating that CAPF's assets "currently are held in two trusts." Because it is not clear that these documents demonstrate matters

Restatement (Third) of Trusts § 3(3) & cmt. e (noting that both corporations and unincorporated associations can serve as trustees in a trust relationship).  Barboza also argues that CAPF failed to maintain "exclusive authority and control" over the assets of the Plan in violation of ERISA because the Plan Instrument delegates the administration of the Plan to CAISI.  This argument fails because the Plan Instrument entrusts CAISI with the administration of the Plan under the management and supervision of CAPF's board of directors.

Because the Plan here complies with the requirement that "all assets of an employee benefit plan shall be held in trust by one or more trustees," 29 U.S.C. § 1103(a), we therefore affirm the district court's grant of summary judgment to the defendants on this issue.

B

We next consider whether the district court erred in granting summary judgment to the defendants on Barboza's claim that the defendants breached their fiduciary duties by engaging in unlawful self-dealing.  This dispute centers on CAISI's practice of paying its own fees and expenses from the Plan's assets held in the Wells Fargo account.  Barboza argues that this practice constitutes a per se violation of ERISA's prohibition against self-dealing under 29 U.S.C. § 1106(b)(1) because CAISI is a fiduciary dealing with the assets of the plan for its own account.  The parties do not dispute that CAISI is a fiduciary of the Plan.

---

"generally known within the trial court's territorial jurisdiction" we deny this motion.  *See* Fed. R. Evid. 201(b)(1).

Section 1106 prohibits a number of transactions between ERISA welfare benefit plans and other parties.  First, § 1106(a) states that "[e]xcept as provided in section 1108," which establishes exemptions from the list of prohibited transactions, a fiduciary cannot cause the plan to engage in a number of transactions with "a party in interest."  29 U.S.C. § 1106(a).  A "party in interest" is defined in 29 U.S.C. § 1002(14) to include all "those entities that a fiduciary might be inclined to favor at the expense of the plan's beneficiaries," *Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 242 (2000), including another fiduciary or an administrator of an employee benefit plan.

Second, § 1106(b) prohibits a fiduciary from engaging in certain types of transactions with respect to a plan:

> A fiduciary with respect to a plan shall not—
>
> (1) deal with the assets of the plan in his own interest or for his own account,
>
> (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
>
> (3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b).  Finally, § 1106(c) prohibits any transfer of real or personal property to a plan by a party in interest. 29 U.S.C. § 1106(c).  These prohibited transactions constitute "per se violations of ERISA."  *Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1345 (9th Cir. 1994).

ERISA carves out a number of exemptions to these broad prohibitions.  *See* 29 U.S.C. § 1108.    Among others, § 1108(c)(2) states that "[n]othing in section 1106 of this title shall be construed to prohibit any fiduciary from . . . receiving any reasonable compensation for services rendered, or for the reimbursement of expenses properly and actually incurred, in the performance of his duties with the plan . . . ."  28 U.S.C. § 1008(c)(2).  This exemption for reasonable compensation under 29 U.S.C. § 1008(c) does not apply, however, to a fiduciary who engages in a prohibited transaction under 29 U.S.C. § 1106(b)(1) by paying itself from the assets of a welfare benefit plan. *Patelco Credit Union v. Sahni*, 262 F.3d 897 (9th Cir. 2001).  In other words, while a plan may pay a fiduciary "reasonable compensation for services rendered" under 29 U.S.C. § 1108, the fiduciary may not engage in self-dealing under 29 U.S.C. § 1106(b) by paying itself from plan funds.  *See Patelco*, 262 F.3d at 910–11.    Such conduct constitutes a per se violation of § 1006(b)(1).  *See Patelco*, 262 F.3d at 911.

Here, CAISI is a fiduciary that paid its own fees from Plan assets, and thus engaged in a prohibited transaction under 29 U.S.C. § 1106(b)(1). *See Patelco*, 262 F.3d at 911. Because § 1108(c)(2)'s safe harbor for fiduciary compensation is not applicable in this context, we conclude that CAISI breached its fiduciary duties.  *See Patelco*,

262 F.3d at 911.[5]  We therefore reverse the district court's order granting summary judgment to the defendants, and remand with instructions to enter summary judgment in favor of Barboza on this issue.

## C

Finally, we consider Barboza's claim that the defendants breached their fiduciary duties by failing to distribute a summary annual report.  Under the regulations promulgated by the Department, an administrator of an employee benefit plan is required to provide a summary annual report to each Plan member annually under 29 C.F.R. § 2520.104b-10(a) unless the administrator is otherwise exempt from doing so under 29 C.F.R. § 2520.104b-10(g).  29 C.F.R. § 2520.104b-10(g) exempts, among other plans, a "totally unfunded welfare plan described in 29 C.F.R. § 2520.104-44(b)(1)(i)," from this summary annual report requirement.

A "totally unfunded welfare plan described in 29 C.F.R. § 2520.104-44(b)(1)(i)," is "[a]n employee welfare benefit plan under the terms of which benefits are to be paid . . . [s]olely from the general assets of the employer or employee organization maintaining the plan."  29 C.F.R. § 2520.104-44(b)(1)(i). An "employee organization" is defined in ERISA as "any employees' beneficiary association organized for the purpose in whole or in part, of establishing" an "employee benefit plan."  29 U.S.C. § 1002(4).  An "employee benefit plan" is defined in turn as "an employee welfare benefit plan

---

[5] Because fiduciary self-dealing under 29 U.S.C. § 1106(b)(1) is a per se violation of ERISA, it is irrelevant that CAISI was authorized to pay its own fees and expenses from Plan assets pursuant to its administrative services agreement with CAPF.

or an employee pension benefit plan or a plan which is both an employee welfare benefit plan and an employee pension benefit plan." 29 U.S.C. § 1002(3). Accordingly, 29 C.F.R. § 2520.104b-10(g) exempts an employee welfare benefit plan that pays benefits from the general assets of an employee organization, which includes an employees' beneficiary association organized for the purpose of establishing such a plan.

The Plan at issue here meets the definition of "a totally unfunded welfare plan." *See* 29 C.F.R. § 2520.104b-10(g)(1). First, the Plan is an employee welfare benefit plan because it is a plan established "for the purpose of providing for its participants or their beneficiaries" long-term disability benefits. 29 U.S.C. § 1002(1)(A). Second, CAPF is an "employee organization" as defined in 29 U.S.C. § 1002(4) because, according to its bylaws, it was incorporated specifically for the purpose of establishing and maintaining a long-term disability benefits plan. Finally, under the terms of the Plan Instrument, benefits are paid solely from the general assets of CAPF, which is the employee organization that maintains the Plan. Accordingly, the Plan is exempt from the summary annual report requirement.[6]

---

[6] The Plan is also exempt from the summary annual report requirement as a "dues financed welfare plan which meets the requirements of 29 C.F.R. 2520.104-26." 29 C.F.R. § 2520.104b-10(g). "Dues financed welfare plans" are "welfare benefit plans maintained by an employee organization, as that term is defined in [29 U.S.C. § 1002(4)], paid for out of the employee organization's general assets, which are derived wholly or partly from membership dues, and which cover employee organization members and their beneficiaries." *Id.* § 2520.104-26(b). As explained *supra*, the Plan is a welfare benefit plan under 29 U.S.C. § 1002(1)(A) because it is a plan established "for the purpose of providing for its participants or their beneficiaries" long-term disability benefits; it is

We therefore reverse the district court's order granting summary judgment to Barboza, and remand with instructions to grant the defendants' motion for summary judgment on this issue.[7]

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

maintained by CAPF, an employee organization as defined by 29 U.S.C. § 1002(4); and these benefits are paid for out of CAPF's general assets, which are derived in part from membership dues, to covered Plan members and their beneficiaries.

[7] Each party shall bear its own costs on appeal.