**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEXANDER ACOSTA, Secretary of Labor, United States Department of Labor, | No. 17-55421 |
| *Plaintiff-Appellee,* | D.C. No. 2:15-cv-03084-TJH-JC |
| v. | |
| CITY NATIONAL CORPORATION; CITY NATIONAL BANK; CITY NATIONAL SECURITIES, INC.; MARIANNE LAMUTT; CHRISTOPHER CAREY; MICHAEL B. CAHILL; MICHAEL NUNNELEE; RICHARD BYRD; VERNON KOZLEN; KATE DWYER; CITY NATIONAL CORPORATION PROFIT SHARING PLAN, | OPINION |
| *Defendants-Appellants.* | |

Appeal from the United States District Court
for the Central District of California
Terry Hatter, District Judge, Presiding

Argued and Submitted January 11, 2019
Pasadena, California

Filed April 23, 2019

Before:  A. Wallace Tashima and Paul J. Watford, Circuit
Judges, and Eduardo C. Robreno,[*] District Judge.

Opinion by Judge Robreno

---

## SUMMARY[**]

### Employee Retirement Income Security Act

The panel (1) affirmed the district court's order granting
partial summary judgment in favor of the Secretary of Labor
and holding City National Corporation and other defendants
liable for self-dealing under ERISA; and (2) affirmed in part
and reversed in part the district court's order granting
summary judgment as to damages.

City National Corporation maintained a defined-
contribution 401(k) employee profit-sharing plan and served
as the Plan's sponsor, administrator, and one of its
fiduciaries.  City National Bank, a subsidiary of City
National Corporation, was the Plan's trustee and
recordkeeper as well as another of its trustees.  For its
services as recordkeeper, City National Bank was
compensated by sharing a portion of mutual funds' fees
charged to the Plan, and it did not maintain a system for

---

[*] The Honorable Eduardo C. Robreno, United States District Judge
for the Eastern District of Pennsylvania, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

tracking how much time its employees spent servicing the Plan.

Affirming as to liability, the panel held that City National Corporation engaged in prohibited self-dealing under ERISA § 406(b) by setting and approving its own fees from Plan assets for serving as its own recordkeeper. The panel held that this conduct was not exempted under ERISA § 408(c)(2) as "reasonable compensation" for services provided by a fiduciary such as recordkeeping services. The panel held that the "reasonable compensation" exemption does not apply to prohibited self-dealing, including where a self-dealing fiduciary seeks the exemption for actual and legitimate services rendered.

Affirming in part as to damages, the panel held that the loss associated with a prohibited transaction is at least the entire cost of the prohibited transaction. Where the fiduciary has engaged in self-dealing, the entire cost is the total amount of the illegal compensation that the fiduciary paid itself. The district court allowed certain offsets, but City National Corporation contended that additional offsets should have been deducted from the damages award because they were based on estimates of certain direct expenses such as employee compensation and third-party expenses. The panel held that City National Corporation did not meet its burden of proof because the additional offsets were effectively based on unreliable and insufficient evidence.

Reversing the district court's award of prejudgment interest, the panel held that the district court abused its discretion by awarding interest on amounts that the Plan never lost. The panel remanded for a recalculation of the prejudgment interest portion of damages.

## COUNSEL

Robin Meadow (argued), Jonathan H. Eisenman, and Edward L. Xanders, Greines Martin Stein & Richland LLP, Los Angeles, California; Christopher Craig, Catalina Vergara, and Brian D. Boyle, O'Melveny & Myers LLP, Los Angeles, California; for Defendants-Appellants.

Jeffrey M. Hahn (argued), Senior Trial Attorney; Thomas Tso, Counsel for Appellate and Special Litigation; G. William Scott, Associate Solicitor for Plan Benefits Security; Kate O'Scannlain, Solicitor of Labor; Office of the Solicitor, United States Department of Labor, Washington, D.C.; for Plaintiff-Appellee.

## OPINION

ROBRENO, District Judge:

This case is about liability for self-dealing and breach of fiduciary duties under the Employee Retirement Income Security Act of 1974 ("ERISA") and the corresponding assessment of damages. Both issues—liability and calculating damages—revolve around a compensation scheme for an employee profit-sharing plan's recordkeeper. Specifically, the Department of Labor (the "DOL") brought this action under ERISA for breach of fiduciary duties and self-dealing by City National Corporation along with various of its subsidiaries and employees (collectively, "City National") in administering City National's employee profit-sharing plan. The district court first granted the DOL's motion for partial summary judgment as to liability as to self-dealing and breach of fiduciary duties. In a separate order, after reviewing cross-motions for summary judgment

as to damages, the district court then granted the DOL's motion for summary judgment as to damages.

On appeal, City National argues that (1) it is not liable for self-dealing[1] because it is exempted under § 408(c) of ERISA or, in the alternative, that the self-dealing claim is time-barred; (2) the district court erred in refusing to deduct certain offsets from the damages award; and (3) the district court abused its discretion in awarding prejudgment interest on the damages award before deducting the unopposed offsets.

The district court had jurisdiction pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e). We have jurisdiction pursuant to 28 U.S.C. § 1291. For the reasons set forth below, we affirm the district court's order as to liability and affirm in part, reverse in part, and remand as to damages.

## I.

The basic facts of the case are not disputed. City National Corporation maintains a defined-contribution 401(k) employee profit-sharing plan (the "Plan"), which is subject to Title I of ERISA, and serves as the Plan's sponsor, administrator, and one of its fiduciaries. City National Bank ("CNB"), a subsidiary of City National Corporation, is the Plan's trustee and recordkeeper as well as another of its fiduciaries.

CNB became the Plan's recordkeeper on April 1, 2000, pursuant to an agreement between the Plan and CNB. As recordkeeper, CNB's duties included generating participant

---

[1] City National does not challenge the district court's determination of liability for breach of fiduciary duties for actions separate from self-dealing.

account statements, processing participant investments and withdrawals, and processing contributions to the Plan.

None of the above-mentioned facts, however, creates a real problem. Rather, the issue is the way in which CNB was compensated by the Plan for its service as recordkeeper and documented its expenses. CNB was compensated by sharing a portion of the mutual funds' fees charged to the Plan through a process known as "revenue sharing," which occurred through a largely automated process from 2006 to 2011. During this time, CNB was not only the recordkeeper for the Plan but also for over 200 other ERISA plans. In this role, CNB did not maintain a system for tracking how much time its employees specifically spent servicing the Plan. As a result of this largely automated payment process and a lack of records documenting direct expenses incurred in servicing the Plan, CNB was without proof of what expenses were actually incurred in servicing the Plan for any given month between 2006 and 2011.

At various times, the City National Corporation Benefits Committee, which met periodically to review the Plan's fee structure, considered that the service-provider fees might be "high." Each time the Benefits Committee reached this conclusion it prospectively reduced the fees CNB charged the Plan but never rebated any of the amounts previously received by CNB.

In July 2009, the DOL first notified City National of its investigation of possible ERISA violations by City National. City National then retained Mercer Consulting ("Mercer") to conduct a review of the Plan. Mercer concluded that the fees paid to CNB were higher than those reported in its survey of comparably sized clients. Yet after receiving Mercer's report, City National did not retroactively rebate any amounts previously paid by the Plan to CNB.

The DOL filed a complaint on April 24, 2015, alleging, among other claims, that CNB engaged in prohibited self-dealing under ERISA § 406(b), 29 U.S.C. § 1106(b), when CNB set and approved its own recordkeeping fees and regularly accepted those fees as compensation for its services. After the complaint was filed, City National retained Basil Imburgia, a financial expert, to provide a report demonstrating that CNB's compensation never exceeded the direct expenses incurred in serving the Plan. This report, however, relied on an estimate of the direct expenses for a given year using the following methodology: the total amount of expenses CNB incurred servicing all of its 200-plus plans multiplied by the ratio of the number of participants in the Plan to the total number of participants serviced by CNB across all plans.

Following discovery, the DOL moved for partial summary judgment as to liability, which the district court granted. Anticipating the question of damages, the district court ordered an independent accounting of City National's Plan-related revenue. City National retained Evercore Trust Company ("Evercore") to conduct the court-ordered accounting. Evercore determined that City National received $4,647,090.27 in revenue sharing payments from 2006 to 2012 and then went on to calculate the Plan's lost opportunity costs, *i.e.*, the money that the Plan would have earned had the Plan, and not City National, received these revenue sharing payments and invested the proceeds. Evercore applied two alternative interest rates: (1) the rate of return that the Plan experienced over the relevant time period and (2) the DOL's Voluntary Fiduciary Correction Program ("VFCP") interest rate, which is used when a fiduciary voluntarily agrees to return amounts to a plan. Under the Plan's rate of return, the Plan's total losses (including lost

opportunity costs) were $8,185,596.13, and under the VFCP rate, the Plan's total losses were $6,061,101.19.

The district court granted the DOL's motion for summary judgment on damages. Specifically, in an order dated February 8, 2017, the district court, relying on Evercore's report, awarded $7,367,382.13 in damages to the DOL. This amount was based on a gross amount of $8,185,596.13 less certain unopposed offsets.[2] The district court reached this decision after considering and rejecting City National's arguments that the amount of damages should either be nothing or $1,129,832.00 after applying the VFCP rate and deducting various offsets for Plan expenses. In making its decision, the district court reached the following conclusions: (1) the VFCP rate of return is applied when a breaching fiduciary voluntarily corrects its violations rather than here when a fiduciary stops the breach after a third party identifies it, and (2) the additional offsets for Plan expenses were not proven as actually incurred but instead were either based on estimates or were for expenses outside the relevant time period.

City National appeals the grant of summary judgment finding City National liable under ERISA § 406(b) for self-dealing and the amount of damages and prejudgment interest.

## II.

We review a district court's order granting a motion for summary judgment *de novo*. *Zetwick v. Cty. of Yolo*,

---

[2] These unopposed offsets included KPMG's audit of the Plan for Plan years 2006 to 2010, prospectus delivery fees, and previously rebated mutual fund revenue compensated between November 24, 2008, and December 14, 2011.

850 F.3d 436, 440 (9th Cir. 2017). "Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact." *Id.* (internal citation and quotation marks omitted). In reviewing cross-motions for summary judgment, "each motion must be considered on its own merits." *Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (internal citations, quotation marks, and alterations omitted).

An award of prejudgment interest is reviewed under an abuse of discretion standard. *In re Agric. Research & Tech. Grp., Inc.*, 916 F.2d 528, 533 (9th Cir. 1990).

## III.

City National's challenge to the amount of damages only needs to be considered if we find summary judgment on liability was properly granted. Therefore, we turn first to City National's challenge regarding its liability.

## A.

City National does not contest that it engaged in what is typically prohibited self-dealing by setting and approving its own fees from Plan assets for serving as its own recordkeeper. Instead, City National contends that this conduct is exempted under ERISA § 408(c)(2), 29 U.S.C. § 1108(c)(2), as "reasonable compensation" for services provided by a fiduciary such as recordkeeping services.[3] We reject this argument.

---

[3] In the alternative, City National argues that the DOL's claims are untimely. We reject this argument and hold that the DOL's claims were timely in light of the five tolling agreements that the parties entered into

We have previously held that the "reasonable compensation" exemption does not apply to prohibited self-dealing under ERISA § 406(b). *Barboza v. Cal. Ass'n of Prof. Firefighters*, 799 F.3d 1257, 1269 (9th Cir. 2015); *Patelco Credit Union v. Sahni*, 262 F.3d 897, 910–11 (9th Cir. 2001).

City National argues, however, that the holdings in *Patelco* and *Barboza* are limited to circumstances where the fiduciary received kickbacks and transfers of plan assets to a personal account or otherwise received compensation for illegitimate services. We find this argument foreclosed by circuit precedent. Although *Patelco* involved this type of conduct by the fiduciary, *Barboza* did not. In fact, the conduct in *Barboza* is very similar to the conduct in the instant case—self-dealing through payments for otherwise legitimate services. *See Barboza*, 799 F.3d at 1269 ("This dispute centers on [the fiduciary's] practice of paying its own fees and expenses from the Plan's assets held in the Wells Fargo account."). Moreover, even in *Patelco*, where the fiduciary's conduct was particularly egregious, in considering other cases from across the country that addressed the applicability of the "reasonable compensation" exemption to fiduciary self-dealing, we broadly held that "the reasonable compensation provision does not apply to fiduciary self-dealing." *Patelco*, 262 F.3d at 911. Subsequently, in *Barboza*, we reaffirmed the broad sweep of our holding in *Patelco* that the "exemption for reasonable compensation under [§ 408(c)] does not apply . . . to a fiduciary who engages in a prohibited transaction under [§ 406(b)] by paying itself from the assets of a welfare

beginning in September 2011 and ending in February 2015 covering all of the years for which the DOL seeks recompense for the Plan. *See* 29 U.S.C. § 1113(1)(A).

benefit plan." *Barboza*, 799 F.3d at 1269 (citing *Patelco*, 262 F.3d 897). "In other words, while a plan may pay a fiduciary 'reasonable compensation for services rendered' under [section 408], the fiduciary may not engage in self-dealing under [section 406(b)] by paying itself from plan funds." *Id.* (citing *Patelco*, 262 F.3d at 910–11). Simply put, the holdings of *Patelco* and *Barboza* are not limited to fact patterns where the fiduciary received compensation for illegitimate services. Therefore, to the extent that there is any doubt regarding the applicability of *Patelco* and *Barboza* to cases where a self-dealing fiduciary seeks the reasonable compensation exemption for actual and legitimate services rendered, we remove that doubt today.

## B.

Having established that City National engaged in prohibited self-dealing and, therefore, that summary judgment as to liability was properly granted, we next turn to the issue of damages. Because the parties submitted cross-motions for summary judgment as to damages, we must consider each motion separately. *Fair Housing Council*, 249 F.3d at 1136. We note, however, that because the two motions center around the same dispositive issue—whether City National is entitled to additional offsets—and City National has the same burden of proof under substantive law in both motions, granting the DOL's motion compels denying City National's motion.

When reviewing the DOL's motion, our decision "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). It is City National's burden here, as it would be at trial, to demonstrate that it is entitled to the additional offsets. In other words, whether opposing the DOL's motion or

supporting its own motion, City National bears the burden of proving that it is entitled to the additional offsets. Accordingly, we ask "whether reasonable jurors could find by a preponderance of the evidence that [City National] is entitled to a verdict—whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing [the evidence], upon whom the onus of proof is imposed." *Id.* (internal citations, quotation marks, and alterations omitted).

Under Ninth Circuit precedent, the loss associated with a prohibited transaction is at least "the entire cost of the prohibited transaction." *Kim v. Fujikawa*, 871 F.2d 1427, 1431 (9th Cir. 1989). In cases where the fiduciary has engaged in self-dealing, we have previously held that the "entire cost" of the transaction is the total amount of the illegal compensation that the fiduciary paid itself. *See Patelco*, 262 F.3d at 911. In determining this amount, a court "should resolve doubts in favor of the plaintiffs." *Kim*, 871 F.2d at 1431 (quoting *Leigh v. Engle*, 727 F.2d 113, 138–39 (7th Cir. 1984)). Accordingly, citing *Kim*, the district court correctly determined that the expenses were City National's burden to prove and any doubts related to damages should be resolved in the DOL's favor.

To be clear, the DOL did not oppose $818,214.00 in offsets. At issue in this case are additional offsets that the district court did not deduct from the damages award because they were based on estimates of certain direct expenses such as employee compensation and third-party expenses. City National contends that had the district court considered these expenses, it would have been clear that the Plan never suffered a loss, that is, that CNB never received more compensation than necessary for performing its recordkeeping services. But City National has failed to meet

its burden to show that it is entitled to these offsets because these offsets are effectively based on unreliable and insufficient evidence. We conclude that no reasonable jury could find in favor of City National given the paucity of the evidence demonstrating that the additional offsets represent expenses actually incurred by CNB in servicing the Plan. Below, we first discuss employee compensation before turning to the third-party expenses.

### 1. Employee Compensation

In support of its argument that City National is not entitled to any additional offsets, the DOL points to a Ninth Circuit case where the fiduciary did not keep adequate records of how much time employees spent providing services to a specific plan, similar to the instant case. *See Kim*, 871 F.2d at 1430–31. But the DOL slightly mischaracterizes *Kim*. The *Kim* Court did not hold that estimates could not be considered but rather that the fiduciary had simply not presented sufficient evidence to meet its burden of proof. *Id.*

Similarly, here, as the district court observed, aside from the offsets unopposed by the DOL, City National failed to provide evidence showing that its requested offsets were actually incurred by CNB in servicing the Plan. *See Perez v. City Nat'l Corp.*, 176 F. Supp. 3d 945, 948 (C.D. Cal. 2016). Instead, City National's proposed offsets were based on estimates or averages, which the district court found insufficient "to raise a triable issue."[4] *Id.* at 949. The issue,

---

[4] Although not entirely clear, we read the district court's determination that there was no "triable issue" to mean both that there is no genuine dispute as to any material fact and that the DOL is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

in this case, however, can be significantly simplified: did City National's evidence of these offsets prove that the expenses were incurred by the Plan? The answer is simply "no." Plainly put, no reasonable juror could find in City National's favor on this issue.

Because ERISA does not supply a method for proving offsets, that method is supplied by federal common law. *See Salyers v. Metro. Life Ins. Co.*, 871 F.3d 934, 939 (9th Cir. 2017). "In developing a body of federal common law governing employee benefit plans," we have an "'obligation' to adopt a federal rule that 'best comports with the interests served by ERISA's regulatory scheme.'" *Id.* (quoting *PM Grp. Life Ins. Co. v. W. Growers Assur. Trust*, 953 F.2d 543, 546 (9th Cir. 1992)).

In this case, City National's evidence of its expenses was based on the Imburgia Report. Because City National allocated employee salaries across hundreds of plans without maintaining contemporaneous records of such employee compensation, the report relied on after-the-fact estimates of the allocation of employee compensation across all plans serviced by CNB. Given that there were no contemporaneous time records or other records reliably demonstrating how much time employees spent servicing the Plan, the figures provided in the report were simply a rough estimate and did not satisfy City National's burden of proof. *See Kim*, 871 F.2d at 1431 (discussing that a breaching fiduciary is entitled to offsets only if it can prove that those offsets are for direct expenses benefitting the plan and explaining that "[t]his is nothing more than application of the principle that, once a breach of trust is established, uncertainties in fixing damages will be resolved against the wrongdoer") (internal citation omitted).

To be sure, contemporaneous records are not required in all cases and are not necessarily the only way to determine the amount of expenses incurred by the fiduciary. They are, however, an important and reliable form of evidence for documenting that the fiduciary only receives its actual expenses. *See* U.S. Dep't of Labor, Office of Pension and Welfare Benefit Programs, Opinion No. 80-58A, 1980 WL 8955, at \*2 (Oct. 1, 1980) (discussing why a *per diem* reimbursement allowance is not allowed because such an amount may be in excess of actual expenses). Additionally, in its advisory opinion No. 93-06A, in a slightly different context, the DOL addressed the importance of maintaining adequate records of employee compensation. *See generally* U.S. Dep't of Labor, Office of Pension and Welfare Benefit Programs, Opinion No. 93-06A, 1993 WL 97262 (Mar. 11, 1993). In Opinion No. 93-06A, the DOL explained that employee salaries "may be a properly reimbursable expense . . . if the expense would not, in fact, have been sustained had the services not been provided, if it can be properly allocated to the particular services provided, and if the expense does not represent an allocable portion of overhead costs." *Id.* at \*6. The DOL went on to explain that if the fiduciary provides services to multiple plans, then the reimbursement of direct expenses "requires that the parties maintain records adequate to verify that the allocation methods employed properly allocate expenses to the plans from which reimbursement is obtained." *Id.*

In this case, during the relevant period, City National provided services to multiple plans, and without adequate records, the best the Imburgia Report could offer was speculation that five or six employee positions would have been eliminated but for their work on the Plan. Such an estimate is hardly "adequate to verify that the allocation . . . properly allocate[s] expenses . . . ." *Id.*

## 2. Other Expenses

City National also argues that the district court improperly excluded certain rebates purportedly paid to the Plan, certain third-party expenses, and revenue derived from City National's own proprietary mutual funds. But, similarly, these offsets were either not shown as actually incurred expenses or were incurred outside of the relevant time period. Each is addressed in turn.

### a.  Rebates

The district court offset City National's liability by $538,902 in rebates that City National paid to the Plan. City National, however, argues that the district court should have offset its liability by an additional $290,000 in rebates. In its opening brief in support of its motion for partial summary judgment as to damages and its opposition to the DOL's motion, it relied on minutes of the Benefits Committee as evidence that these rebates were indeed paid. Although this evidence supports the contention that the Benefits Committee approved the payments, it does not show that the rebates were indeed paid.

In reply, City National provided certain trust account statements as additional evidence that these rebates were paid. The district court's finding that it was not presented with evidence proving that the expenses, including these rebates, were actually incurred is correct. The trust account statements provided by City National are part of a 500-page package of exhibits offered in reply during the motion practice on summary judgment. These statements were produced by City National without a clear explanation as to which exhibits supported which rebates. In the absence of such explanation, *i.e.*, matching the rebates to a specific account, it was proper for the district court to conclude that

the evidence was insufficient to show that the rebates were actually paid.

### b. Third-Party Direct Expenses

City National further argues that the district court improperly excluded three different third-party administrative expenses, all of which were allegedly contemporaneously documented. Each is discussed in turn.

First, City National seeks an offset for $207,003 in custodial fees retained by Fidelity. As with the employee compensation, however, the evidence of this expense is the Imburgia Report, which did not base this amount on any evidence of actual payments made to Fidelity. Instead, the amount is based on what these payments might or should have been under the terms of City National's agreement with Fidelity. City National has also submitted spreadsheets purporting to show these Fidelity payments, but these spreadsheets were only submitted with City National's reply and lacked a clear explanation. More problematic, however, is the fact that these spreadsheets suffer from other fatal defects; they appear to be self-generated, may well have undergone multiple iterations, and are without any documentation or evidence to substantiate the numbers.

For City National to prove that it actually incurred expenses by paying Fidelity custodial fees, City National would have needed to produce reliable and sufficient documentation such as a receipt, account statement, or other document showing actual payments. Here, because the evidence for the custodial fees was an unsubstantiated and self-generated spreadsheet, the district court properly excluded offsets for the custodial fees.

Second, City National argues that the district court improperly excluded $145,660 in printing and mailing costs. Although City National submitted numerous invoices for such services, the invoices did not specify which of the hundreds of plans serviced by City National received the printing and mailing services corresponding to the invoice. Therefore, there was again insufficient evidence that the expenses were actually incurred in servicing the Plan and, even if so, that the invoices were actually paid.

Third, City National argues that the district court improperly excluded a $32,500 offset for an audit of the Plan by KPMG. But this audit, which is required by ERISA, did not concern any of the Plan years in question (2006–2012) but rather Plan year 2005. It makes no difference that City National accounted for audit payments on a cash basis because the expense was incurred in 2005, a year outside of the relevant time. It is also irrelevant that City National did not pay for this audit until 2006 or that the audit did not occur until 2006.

c.   Revenue

City National argues that the district court erroneously included over $534,000 of revenue in the damages award that is categorically exempt from § 406 under Prohibited Transaction Exemption 77-3 ("PTE 77-3").

Under PTE 77-3, § 406 does not apply when an investment company offers its own mutual funds to its employee profit-sharing plan if there are no commissions or extraneous fees and "[a]ll other dealings between the plan and the investment company . . . are on a basis no less favorable to the plan than such dealings are with other shareholders of the investment company." 42 Fed. Reg. 18734, 18735 (Apr. 8, 1977).

In this case, the fact that City National offered its own mutual funds to the Plan does not mean that PTE 77-3 exempts the revenue from the damages award. Instead, PTE 77-3 simply allows a plan to trade in in-house funds. PTE 77-3 does not extend its safe harbor to instances where a self-dealing fiduciary sets and receives a certain amount of revenue from in-house funds as compensation for recordkeeping services it provides to an employee profit-sharing plan.

City National also points to a pre-regulatory notice to argue that PTE 77-3 was intended to allow the fiduciary to collect the entire expense ratio charged by the funds, including customary investment advisory fees and any administrative fees. *See* 41 Fed. Reg. 54080, 54081 (Dec. 10, 1976). But City National misunderstands the import of that pre-regulatory notice. Although the notice explains that a fiduciary may collect an investment advisory fee from the mutual fund pursuant to an investment advisory agreement, nowhere in the notice or in PTE 77-3 does it provide that the fiduciary can also collect such a fee from the plan.

City National has, in its own words, described the $534,000 at issue as "earmarked for shareholder servicing" and has cited the recordkeeping agreement as the basis for its receipt of revenue from the mutual funds. Therefore, from the record before us, we conclude that City National is simply seeking its recordkeeping fees, which cannot be offset against the damages award in this case because they were incurred through City National's self-dealing.

### 3. City National's Motion for Summary Judgment on Damages

For the same reasons that we grant the DOL's motion for summary judgment on damages, we deny City National's

motion for summary judgment on damages. The two motions center around the same dispositive issue—whether City National is entitled to additional offsets. City National's burden on both motions is the same—to show entitlement to the offsets. *See Anderson*, 477 U.S. at 252. Therefore, by granting the DOL's motion on this issue as City National failed to carry its burden of proof under the substantive law, we are compelled to deny City National's motion for summary judgment on the same issue.

## C.

Although a summary judgment motion is reviewed *de novo*, a district court's award of prejudgment interest on summary judgment is reviewed under an abuse of discretion standard. *In re Agric. Research & Tech. Grp., Inc.*, 916 F.2d at 533. We have previously held that, in the ERISA context, an award of prejudgment interest is "a question of fairness, lying within the court's sound discretion, to be answered by balancing the equities." *Landwehr v. DuPree*, 72 F.3d 726, 739 (9th Cir. 1995) (internal quotation marks omitted).

The essential point of prejudgment interest is to "ensure that an injured party is fully compensated for its loss." *City of Milwaukee v. Cement Div., Nat. Gypsum Co.*, 515 U.S. 189, 195 (1995). The loss in this case is the entire cost of the transaction, that is, the illegal compensation plus the lost opportunity cost. The unopposed offsets do not reflect losses or illegal compensation. Accordingly, we find that the district court abused its discretion by awarding interest on amounts that the Plan never lost.  In other words, the district court calculated prejudgment interest on City National's liability for the gross amount of its recordkeeping compensation rather than on its net compensation after the unopposed offsets were deducted (*i.e.*, the unopposed revenue-sharing rebates and third-party expenses). In doing

so, the district court effectively required City National to pay interest on more than the entire cost of the transaction. Therefore, we reverse the district court on this issue and remand for a recalculation of the prejudgment interest portion of damages.

## IV.

We conclude that the district court's grant of summary judgment in favor of the DOL as to liability was proper because the "reasonable compensation" exemption under ERISA § 408(c)(2) does not apply to self-dealing by a fiduciary. Therefore, we affirm the district court's grant of summary judgment as to liability.

We next conclude that the additional offsets City National argues for were not sufficiently proven as "actually incurred" or were outside of the relevant time period. Because no reasonable jury could find in favor of City National on its claim of entitlement to the additional offsets, we affirm the district court's grant of summary judgment in favor of the DOL and against City National on this issue. For the same reasons, we affirm the denial of City National's summary judgment motion on this issue. Finally, we conclude that the district court abused its discretion by awarding prejudgment interest before deducting the allowed offsets. Therefore, we reverse and remand on the same issue for a recalculation of damages as to prejudgment interest.

The parties shall bear their own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**